UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEY S. SIMPSON; CHRISTOPHER L. SITTENAUER; CHRISTOPHER E. SITTENAUER; LKS; and BAS and ZES, minors by and through their Guardian ad Litem, KELLEY S. SIMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.; and DOES 1-10,<br><br>Defendants. | No. 2:19-cv-02389-JAM-KJN<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER, DENYING PLAINTIFFS' MOTION TO EXERCISE COLORADO RIVER ABSTENTION, AND DECLINING TO ADJUDICATE PLAINTIFFS' MOTION FOR A DISCRETIONARY STAY** |

Plaintiffs filed a suit against their car insurance company in Placer County Superior Court. They allege Defendant unlawfully deprived them of personal insurance protection benefits following a car accident in California. Ex. 1 to Notice of Removal, ECF No. 1. Plaintiffs filed their complaint alongside two personal injury suits stemming from the car accident. Before Plaintiffs could consolidate the three cases, Defendant removed this suit to federal court. It now seeks to transfer the case to the Eastern District of Michigan. Mot. to

1

1  Transfer Venue, ECF No. 3. Plaintiffs opposed this motion, ECF
2  No. 10, and filed a motion to either stay the federal court
3  proceedings pending resolution of the action in state court or
4  abstain from exercising its jurisdiction. Mot. to Stay, ECF No.
5  8.[1] State Farm opposed Plaintiffs' motion. ECF No. 9. For the
6  reasons discussed below, the Court GRANTS Defendant's motion to
7  transfer. Moreover, the Court DENIES Plaintiffs' motion to
8  exercise Colorado River abstention and DECLINES TO ADJUDICATE
9  Plaintiffs' motion for a discretionary stay.

11                         I.   BACKGROUND
12    Two years ago, Christopher E. Sittenauer ("Sittenauer"), his
13 mother, and his three younger siblings traveled from Michigan to
14 California. Ex. 1 to Notice of Removal ¶ 2 ("Compl."), ECF No.
15 1. While in California, they were involved in a serious car
16 accident. Compl. ¶ 1. Plaintiffs allege this accident occurred
17 because another driver, Holly Van Doren, crossed over a double-
18 yellow line, veering into Sittenauer's lane. Compl. ¶ 1.
19 Everyone in Sittenauer's car suffered injuries in the collision.
20 Compl. ¶ 2. They, along with Sittenauer's father—the primary
21 policyholder for Plaintiffs' insurance policy—filed suit in
22 Placer County Superior Court. See Mot. to Stay at 2-3.
23    Initially, all of the plaintiffs in this case filed a
24 personal injury suit against Van Doren. Mauer Decl. ISO Mot. to
25 Stay ("Mauer Decl.") ¶ 4, ECF No. 8-2. But shortly thereafter,

---

[1] These motions were determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for May 5, 2020.

2

Plaintiffs Kelley Simpson, Christopher L. Sittenauer, Brigitta Sittenauer, and Zoe Sittenauer voluntarily dismissed their claims without prejudice and refiled with new counsel. Id. The second suit named both Van Doren and Sittenauer as defendants. Id. The third suit arose between Plaintiffs and State Farm when the insurance carrier denied them certain no-fault personal insurance protection ("PIP") benefits provided by Michigan's No-Fault Automobile Insurance Act (MCL 500.3101, et seq.). Compl. ¶¶ 11, 15-18.

## II. OPINION

### A. Abstention

Plaintiffs contend the Court should abstain from exercising its jurisdiction over this suit under the Colorado River abstention doctrine. Mot. to Stay at 8. Although Plaintiffs argue for Colorado River abstention as an alternative to a discretionary stay, the Court finds it proper to address jurisdiction-related issues first. In doing so, the Court finds Colorado River abstention is not proper here.

Federal courts "have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' including in cases involving parallel state litigation." Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 841 (9th Cir. 2017) (quoting Colo. River, 424 U.S. at 817). Even so, "[t]he Colorado River doctrine allows a district court to stay or dismiss a federal suit 'due to the presence of a concurrent state proceeding for reasons of wise judicial administration.'" Minucci v. Agrama, 868 F.2d 1113, 1115 (9th Cir. 1989) (quoting

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15, 103 S.Ct. 927, 936 (1983)).

Federal courts may only "[a]bdicat[e] . . . the obligation to decide cases" under Colorado River "in [] exceptional circumstances." Seneca Ins. Co., 862 F.3d at 841. They must balance eight factors to determine whether exceptional circumstances exist: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. Id. at 841-42. "Any doubt as to whether a factor exists should be resolved against a stay [or dismissal]." Id. at 842 (quoting Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990)).

As both parties agree, the first factor does not apply. Mot. to Stay at 9; Opp'n to Stay at 6 n.3. The second, fourth, and seventh factors, however, weigh in favor of abstaining. Adjudicating a suit in federal court is not per se inconvenient when a similar suit is pending in state court. But when two out of three similar suits are pending in state court, awaiting consolidation, it is undoubtedly inconvenient to have the third component litigated in a separate city, before a different judge, bound by a separate set of procedural rules. Defendant's

conclusory statement to the contrary does not sway the Court. See Opp'n to Stay at 6.

The fourth factor is undisputed—Placer County Superior Court obtained jurisdiction over the state suits first. Mauer Decl. ¶ 2. Moreover, the Court finds that exercising its jurisdiction over this case would promote forum shopping. Defendant argues that if any party has engaged in forum shopping it was Plaintiffs: Michigan residents with a Michigan insurance policy who opted to file their lawsuit in California. Opp'n to Stay at 7. This argument ignores all relevant context. California is likely the only state whose courts would have personal jurisdiction over the defendants in all three cases. Bearing this jurisdictional consideration in mind, Plaintiffs filed in the forum that would allow them to adjudicate all three components of their suit in the state where the accident occurred. Even though Defendant has offices and attorneys in California, it opted to disrupt Plaintiffs' reasonable choice of forum—first, removing the suit to federal court, then requesting to transfer it halfway across the country. These forum-shopping efforts weigh heavily in favor of abstention.

The fifth factor—whether federal or state law provides the rule of decision on the merits—is neutral. The "presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983). But as Plaintiffs argue, the inverse is not always true. Mot. to Stay at 11. The "the presence of state-law issues may weigh in favor of [abstention]" only "in some rare circumstances." Moses H.

5

1  Cone Memorial Hosp., 460 U.S. at 26.  The state law issues must
2  be so unusually complex that they are better suited for
3  adjudication by the court most familiar with that state's law.
4  Seneca Insur. Co., Inc. v. Strange Land, Inc., 862 F.3d 835, 844
5  (9th Cir. 2016).  Plaintiffs' insurance contract claims are not
6  unusually complex.  Nor is a California state court uniquely
7  familiar with the Michigan law that governs those claims.  That
8  state law provides the rule of decision weighs neither in favor
9  nor against abstention.
10     The remaining factors—factors three, six, and eight—counsel
11 against abstention.  Contrary to what Plaintiffs argue,
12 adjudication of this suit in federal court will not result in
13 piecemeal litigation at all, let alone the type of piecemeal
14 litigation that the Colorado River abstention doctrine deems
15 troublesome.  "Piecemeal litigation occurs when different
16 tribunals consider the same issue, thereby duplicating efforts
17 and possibly reaching different results."  Seneca Ins. Co., 862
18 F.3d at 842 (quoting Am. Int'l Underwriters (Philippines), Inc.
19 v. Cont'l Ins. Co., 843 F.2sd 1253, 1258 (9th Cir. 1988)).
20 Plaintiffs' federal and state court suits do not implicate the
21 same legal issues.  Plaintiffs' state court suits aim to assess
22 drivers' relative fault in the car accident that caused
23 Plaintiffs' injuries.  This suit, on the other hand, revolves
24 around the question of whether they are entitled to benefits for
25 the injuries they incurred.  The issues pending in state court
26 are, in a layman's sense, related to the issues in this suit.
27 And resolution of the state court proceedings may aid the
28 federal litigants in informally resolving their claims.  But

1  Plaintiffs have not identified how the state and federal
2  tribunal could arrive at conflicting results in a legal sense.
3  Nor can the Court.
4      Furthermore, Colorado River abstention is not appropriate
5  for every risk of piecemeal litigation.  Id.  The risk of
6  conflicting state and federal court judgments must be one that
7  undermines a federal policy or a federal interest in uniformity.
8  Id. at 842-43.  Allowing Plaintiffs' suits to proceed
9  concurrently in state and federal courts will not implicate or
10 risk undermining any national interests in uniformity.
11     Finally, the state court proceedings will not "adequately
12 protect the rights of the federal litigants" or "resolve all
13 issues before the federal court."  See id. at 845.  Plaintiffs
14 insist that State Farm's lien on Plaintiffs' state-court
15 proceedings sufficiently guards State Farm's interests.  Mot. to
16 Stay at 11-12.  But the fact that State Farm's lien may
17 ultimately reimburse previously-paid benefits does not answer
18 the question of whether State Farm breached its contract, acted
19 in bad faith, or violated Michigan law by initially denying
20 those benefits.  The state court proceedings are therefore
21 inadequate to protect Defendant's interests in this case.
22     The prospect of informal settlement also does not satisfy
23 Colorado River's "parallelism" factor.  Plaintiffs contend that,
24 given the current settlement discussions, "there is only a small
25 doubt that the resolution of state court actions will not
26 [resolve] this action."  Id. at 12. But the question of
27 parallelism factor asks whether a state proceeding will resolve
28 the issues presented in a federal court as a matter of law, not

7

as a matter of practicality. See Seneca Insur. Co., 862 F.3d at 845. And, as a matter of law, the Court finds resolution of Plaintiffs' personal injury claims will leave Plaintiffs' insurance claims unresolved.

Although some Colorado River factors weigh in favor of abstention, the parallelism factor is ultimately dispositive. See id. at 845 (quoting Cone Mem'l Hosp., 460 U.S. at 28, 103 S. Ct. 927 ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.")). The Court therefore finds Colorado River abstention is improper here.

B. Transfer

Defendant requests the Court transfer this case to the Eastern District of Michigan. Federal law governs this motion. Ravelo Monegro v. Rosa, 211 F.3d 509, 511-12 (9th Cir. 2000). More specifically, because Defendant seeks to transfer this case from one federal district court to another, 28 U.S.C. § 1404(a) applies.

When assessing the propriety of a section 1404 transfer, a district court must first determine whether Plaintiffs could have originally brought their suit in the transferee district. Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). If so, the court then "evaluate[s] both the convenience of the parties and various public-interest considerations." Atlantic Marine Const.

8

1  Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas, 571
2  U.S. 49, 62 (2013). Upon weighing these private- and public-
3  interest factors, the court must "decide whether, on balance, a
4  transfer would serve 'the convenience of the parties and
5  witnesses' and otherwise promote 'the interests of justice.'"
6  Id. at 62-63 (quoting 28 U.S.C. § 1404(a)).
7      It is undisputed that Plaintiffs could have originally
8  filed their suit against State Farm in the Eastern District of
9  Michigan. The Eastern District of Michigan would have had both
10 personal jurisdiction over the parties and subject-matter
11 jurisdiction over the suit. See Mot. to Transfer at 7-8. Venue
12 would have also been proper. See id. The propriety of
13 Defendant's motion therefore turns upon whether transferring the
14 case to the Eastern District of Michigan would promote both the
15 convenience of the parties and the interests of justice.
16          1.   Private Interest Factors
17     To determine whether the convenience of the parties and
18 witnesses is best served by transferring the case, courts
19 consider: (1) where the relevant agreements were negotiated;
20 (2) what state is most familiar with the governing law; (3) the
21 plaintiff's choice of forum; (4) the parties' contacts with the
22 forum; (5) the contacts relating to the plaintiff's cause of
23 action in the chosen forum; (6) the differences in cost of
24 litigation in the two forums; (7) the availability of compulsory
25 process to compel attendance of unwilling non-party witnesses;
26 and (8) the ease of access to sources of proof. See Jones v.
27 GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).
28 Defendant bears the burden of showing that the transferee

district would be "a more convenient forum, not a forum likely to prove equally convenient or inconvenient." Pizana v. SanMedica Int'l LLC, No. 1:18-cv-00644-DAD-SKO, 2019 WL 4747947, at *3 (E.D. Cal. Sept. 30, 2019)

Quoting Atlantic Marine Const. Co., Inc., Defendant argues, "When a defendant files a section 1404(a) motion, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." 571 U.S. at 52. This selective reading of Atlantic Marine is incorrect. The "extraordinary circumstances" standard only applies when a Defendant invokes section 1404(a) to enforce a forum-selection clause. Id. "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." Id. at 63. The court may not give any weight to the plaintiff's choice of forum. Id. Nor may it consider any factors related to the parties' or witnesses' convenience. The purpose of these modifications is to give the forum-selection clause "controlling weight in all but the most exceptional cases." Id. at 63. But Defendant does not identify any forum-selection clause that its motion seeks to enforce. Defendant therefore bears the burden of showing that the Eastern District of Michigan is a more convenient forum for both the parties and the witnesses.

The Court finds three private-interest factors weigh in favor of transferring this suit to the Eastern District of Michigan. As Defendant argues, the insurance policies were negotiated and executed in Michigan. Mot. to Transfer at 6. Moreover, Michigan's No-Fault Automobile Act is the basis for

10

1 Plaintiffs' claims. Id. Lastly, the parties' contacts with the
2 forum counsel toward transferring the suit. Plaintiffs are
3 Michigan residents. Mot. at 8. And eight of the State Farm
4 claim handlers involved in Plaintiffs' claims reside in
5 Michigan. Id. at 10.
6     The private-interest factors favoring transfer do not, by
7 themselves, outweigh the compelling reasons for keeping the suit
8 in this district. Plaintiffs' choice of forum is entitled to
9 significant deference. Admittedly, "the strong presumption in
10 favor of the plaintiff's choice of forum" only exists when the
11 plaintiff chooses to sue in her home forum. Piper Aircraft Co.
12 v. Reyno, 454 U.S. 235, 255-56 (1981). As Piper Aircraft
13 explained, "when the home forum has been chosen, it is
14 reasonable to assume that this choice is convenient," but
15 "[w]hen the plaintiff is foreign, [] this assumption is much
16 less reasonable." Id. Absent evidence to the contrary, a
17 plaintiff's decision to sue outside her home forum triggers
18 concerns that she has prioritized gamesmanship over judicial
19 efficiency. In re Apple, Inc., 602 F.3d 909, 913 (8th Cir.
20 2010). But there is evidence to the contrary here. As already
21 discussed, California is likely the only state where Plaintiffs
22 could litigate all three cases arising out of their California
23 accident in a single forum. Defendant does not present any
24 evidence to suggest Plaintiff filed this suit in California to
25 avail itself of different substantive law or to impede
26 Defendant's ability to litigate. Contra id. Indeed,
27 Plaintiffs' choice of a foreign forum attempted to serve, not
28 deplete, the judicial economy. The Court does not find that

Plaintiffs' decision to sue outside their home state reflects sharp practices. Accordingly, the Court affords their choice of forum significant deference.

For many of the same reasons, the Court also finds that the contacts relating to the plaintiff's cause of action in this district cut against transferring the suit to Michigan. There are significant contacts relating Plaintiffs' suit to California: the underlying accident occurred in California and two other suits arising out of the injuries caused by that accident are pending in a California court. Although this case presents distinct legal issues, the Court cannot deny the relationship between the relief Plaintiffs seek and Plaintiffs' chosen forum.

Finally, the increased cost of litigating in two forums weighs against transferring the case. Defendant's removal has already required Plaintiffs to litigate their suits in both federal and state court. If this suit is transferred, Plaintiffs will have to litigate at the federal and state level in two different states. Plaintiffs represent they would have to retain new counsel if the Court transferred this case to Michigan. Opp'n to Transfer at 9. Plaintiffs will lose the benefit of having legal counsel who is involved and familiar with the state court proceedings, and they will incur additional expenses as their newly-retained counsel gets up to speed. Id. Defendant argues that any inconvenience of proceeding in multiple states is remedied by the fact that the transferee district is in Plaintiffs' home state. Mot. to Transfer at 9. If true, Plaintiffs presumably would not oppose the transfer.

The remaining two factors—the availability of compulsory process to compel attendance of unwilling non-party witnesses and the ease of access to sources of proof—apply neutrally. Defendant argues that Plaintiffs have submitted claims to State Farm from 19 healthcare providers in Michigan and 10 healthcare providers in California. Mot. to Transfer at 10. This ratio, without context, provides the Court little guidance. More relevant to the witness-inconvenience inquiry is which healthcare providers the parties intend to call as witnesses and whether any of them would be unwilling to testify absent compulsory process. See Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc., No. 06-cv-2469-CW, 2006 WL 2868971, at *4-5 (N.D. Cal. Oct. 6, 2006). Plaintiffs represent that many of the relevant out-of-state medical providers already plan to travel to California to testify in the state-court proceedings. Opp'n to Transfer at 11. To that end, transferring this suit to Michigan would not free the witnesses from traveling to California; it would simply require duplicative testimony. Id. The Court finds Defendant's arguments on the witness-convenience factor are too generalized to counsel in favor of transferring this suit. Defendant's sources-of-proof argument is likewise too vague to support its motion for transfer. See Mot. to Transfer at 10-11.

### 2. Public Interest Factors

A district court must also ask whether a section 1404(a) transfer would serve the "interests of justice." 28 U.S.C. § 1404(a). Relevant public interest factors include: (1) the administrative difficulties flowing from court congestion;

13

1   (2) the 'local interest in having localized controversies
2   decided at home'; (3) the interest in having the trial of a
3   diversity case in a forum that is at home with the law that must
4   govern the action; (4) the avoidance of unnecessary problems in
5   conflict of laws, or in the application of foreign law; and
6   (5) the unfairness of burdening citizens in an unrelated forum
7   with jury duty. Decker Coal Co. v. Commonwealth Edison Co., 805
8   F.2d 834, 843 (9th Cir. 1986) (citing Piper Aircraft, 454 U.S.
9   at 255); Leetsch v. Freedman, 260 F.3d 1100, 1105 (9th Cir.
10   2001))
11      As Defendant argues, all of the public interest factors
12   weigh in favor of transferring this suit to the Eastern District
13   of Michigan. Mot. to Transfer at 11-12. Plaintiffs do not
14   meaningfully refute this. See Opp'n to Transfer at 11-12. They
15   argue that California has an interest in "maintaining
16   jurisdiction over this case and staying it so that the state
17   court proceedings can [] be [timely] resolved," but do not
18   provide any authority to support this claim. Id. at 12.
19   Indeed, Plaintiffs continue to ignore that the claims pending in
20   state court will not legally resolve the claims at issue here.
21   Id. And while California has an interest in retaining
22   jurisdiction over personal injury suits that arise within its
23   borders, its interest in adjudicating disputes arising under
24   out-of-state insurance policies is, as Defendant argues "tenuous
25   at best." Def.'s Reply re Transfer at 5, ECF No. 11.
26   ///
27   ///
28   ///

### 3. Conclusion

The Court finds a section 1404 transfer is appropriate here. Several private interest factors and all of the public interest factors indicate that this suit is better suited in the Eastern District of Michigan. See Wireless consumers Alliance, Inc. v. T-Mobile USA, Inc., No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003) ("The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and factors involving convenience of parties and witnesses are in fact subordinate."). The Court therefore grants Defendant's motion to transfer.

### C. Stay

The Court declines to adjudicate Plaintiffs' motion for a discretionary stay. Mot. to Stay at 5-6. Having found that a section 1404 transfer is appropriate, the Court also finds that the Eastern District of Michigan is better equipped "to control the disposition of the causes on its docket." See Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936).

### D. Page Limits

The Court's Order re Filing Requirements ("Order"), ECF No. 2-2, limits reply briefs in support of motions to stay and motions to transfer venue to five (5) pages. Order at 1. A violation of the Order requires the offending counsel (not the client) to pay $50.00 per page over the page limit to the Clerk of Court. Id. The Court does not consider arguments made past the page limit. Id. Defendant's reply brief in support of its motion to transfer exceed the page limit by one (1) page. Defense counsel must therefore send a check payable to the Clerk

15

for the Eastern District of California for $50.00 no later than seven days from the date of this Order. Plaintiffs' reply brief in support of their motion to stay exceeded the page limit by two (2) pages. Plaintiffs' counsel must send a check payable to the Clerk for the Eastern District of California for $100.00 no later than seven days from the date of this order.

### III. ORDER

For the reasons set forth above, the Court GRANTS Defendant's motion to transfer. Moreover, the Court DENIES Plaintiffs' motion to exercise Colorado River abstention and DECLINES TO ADJUDICATE Plaintiffs' motion for a discretionary stay.

IT IS SO ORDERED.

Dated: June 15, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

16